GREATER DALLAS HOME CARE ALLI-
ANCE, Metro Home Health, Inc., Chris-
tian Home Health, and Nurse Call Home
Health, Plaintiffs,

v.

UNITED STATES of America (Depart-
ment of Health and Human Services,
Donna Shalala, Secretary and the
Health Care Financing Administration),
et al., Defendants.

No. CIV.A. 3:98–CV–0821–H.

United States District Court,
N.D. Texas,
Dallas Division.

Feb. 8, 1999.

William Todd Hughey, Law Office of Wil-
liam T. Hughey, Dallas, TX, for Plaintiffs
Greater Dallas Home Care Alliance, Metro
Home Health, Inc., Christian Home Health,
Nurse Call Home Health.

Michael E. Clark, Gardere & Wynne Se-
well & Riggs, Houston, TX, Craig Buck Flor-
ence, Gardere & Wynne, Dallas, TX, James
C. Pyles, Powers Pyles Sutter & Verville,
Washington, DC, for Consolidated Plaintiffs
Texas Ass'n for Home Health Care, Rockwall
Home Health Inc., Medical Insights & Care
Unlimited, Inc., Cardiovascular Home Care,
Inc.

Paula Mastropieri Billingsley, U.S. Atty's
Office, Dept. of Justice, Dallas, TX, David O.
Buchholz, Carol Federighi, U.S. Dept. of Jus-
tice, Washington, DC, for Defendants U.S.,
Dept. of Health and Human Services, Donna
NMI Shalala, Health Care Financing Admin.,
Palmetto Government Benefits Administra-
tors.

Paula Mastropieri Billingsley, U.S. Atty's Office, Dept. of Justice, Dallas, TX, for Consolidated Defendant Nancy Ann Min Deparle.

## *MEMORANDUM OPINION AND ORDER*

SANDERS, Senior District Judge.

The Court has before it Defendants' Motion for Summary Judgment with Supporting Memorandum of Points and Authorities, filed December 1, 1998; Plaintiffs' Response to Defendants' Motion for Summary Judgment, filed January 5, 1999; and Defendants' Objection to Plaintiffs' Exhibit 1, filed January 13, 1999.

Plaintiffs seek a permanent injunction. On June 10, 11, and 12, 1998, this Court heard evidence and oral argument on Plaintiffs' Motion for Preliminary Injunction. Plaintiffs, a group of Texas home health agencies, alleged that Congress acted unconstitutionally in passing those portions of the Balanced Budget Act of 1997 ("BBA"), Pub.L. No. 105–33, §§ 4602 & 4603, which changed the method for paying HHAs under the Medicare Act, 42 U.S.C. § 1395, *et seq.* Plaintiffs also alleged that the Health Care Financing Administration ("HCFA") failed to comply with the Regulatory Flexibility Act ("RFA"), 5 U.S.C. §§ 601—612, in promulgating regulations implementing the BBA. Plaintiffs further asserted a breach of contract claim against the defendants. The Court denied that Motion in a June 22, 1998, Memorandum Opinion and Order. *Greater Dallas Home Care Alliance v. United States,* 10 F.Supp.2d 638 (N.D.Tex.1998). Plaintiffs have since abandoned all of their claims, except for the RFA claim.[1]

After considering the pleadings and relevant authorities, and for the reasons set forth below, the Court is of the opinion that there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law. Therefore, the Defendants' Motion for Summary Judgment will be granted. *See* FED. R. CIV. P. 56.

## I. BACKGROUND [2]

Medicare is a federal health insurance program to provide medical care to eligible elderly and disabled patients. *See* 42 U.S.C. § 1395(c), 1395(d). The Secretary of Health and Human Services ("HHS") is charged with the administration of the Medicare Act. This responsibility has in turn has been delegated to HCFA. Home health care agencies ("HHAs") provide medical care to homebound Medicare beneficiaries and are reimbursed in accordance with the Medicare Act and HCFA's implementing regulations.[3]

Medicare has traditionally reimbursed HHAs pursuant to a *reasonable cost* system which mandated that the HHAs be reimbursed for services rendered to Medicare beneficiaries in accordance with the reasonable costs that they incurred, with the reasonable costs capped by a predetermined maximum limit. However, in an effort to control costs and reduce fraud and abuse in the home health care system, Congress modified the traditional *reasonable cost* reimbursement method in the BBA. Pub.L. No. 105–33, §§ 4602 & 4603. Congress directed that, effective October 1, 1999, and not later than October 1, 2003, HHAs be paid under a Prospective Payment System ("PPS") similar to the one utilized for other Medicare providers such as hospitals. Pub.L. No. 105–33, § 4603(a), *codified at* 42 U.S.C. § 1395ff(a), (b).[4] Until that system can be implemented, Congress required HCFA to implement an Interim Payment System ("IPS"). *Id.,* § 4602 *codified at* 42 U.S.C.

---

1. The consolidated action, 3:98–CV–0821–H, was voluntarily dismissed without prejudice by Order of the Court on October 14, 1998.

2. The Court's June 22, 1998, Memorandum Opinion and Order provided a more detailed explanation of the relevant background information. *See Greater Dallas Home Care,* 10 F.Supp.2d at 641–642. A condensed version of this information is included for the reader's convenience.

3. Under 42 U.S.C. § 1395ff(a), HCFA is authorized to promulgate regulations concerning reimbursement limits and the determination of covered claims.

4. Under the PPS, Medicare providers receive predetermined payments which are intended to account for each patient's unique medical needs.

§ 1395x(v)(1)(L). Congress intended that, in many cases, HHAs' total annual payments under the IPS for treating the same number of beneficiaries as they had before the BBA would be lower than before Congress passed the BBA.

Under the IPS, HHAs are to be paid for cost reporting periods beginning on or after October 1, 1997, based on the lowest of three calculations:

1) The HHAs actual reasonable allowable costs;

2) A revised aggregate per-visit limit not to exceed 105% of the median per-visit costs;

3) A new aggregate per-beneficiary limit.

42 U.S.C. § 1395x(v)(1)(L).

To begin implementing the IPS, HCFA promulgated revised per-visit cost limits on January 2, 1998. *See* 63 Fed.Reg. 89, 92–93 (1998).[5] Thereafter, on March 31, 1998, HCFA promulgated the new maximum per-beneficiary limits. *See* 63 Fed.Reg. 15,717 (1998).[6] Both of these limits were effective retroactively to October 1, 1997.[7]

It is these two regulations setting forth the methodology for determining these limits which are the focus of this litigation. Plaintiffs contend that HHS failed to satisfy the

mandates of the RFA when it issued these regulations. Defendants deny that they violated the RFA, and move for summary judgment.

## II. ANALYSIS

### A. *Defendants' Objection to Plaintiffs' Summary Judgment Evidence*

■ Before moving to the merits of the Defendants' motion for summary judgment, the Court must first address Defendants' evidentiary objection. Plaintiffs attached to their response to the Defendants' motion for summary judgment an affidavit from Jere W. Glover, Chief Counsel for Advocacy of the United States Small Business Administration ("SBA").[8] Attached to this affidavit was a letter, dated June 15, 1998, from Mr. Glover to Ms. Nancy–Ann Min DeParle, Administrator of HCFA, expressing Mr. Glover's criticisms of the regulations which are at issue in this litigation. Defendants object to Mr. Glover's affidavit and the letter, asserting they are improper summary judgment evidence.

The Court previously excluded this specific letter from this case. However, the context was entirely different. In a Memorandum Opinion and Order, dated June 22, 1998, the Court refused to reopen the case for addi-

---

5. While the per visit cost limits used to be calculated at *112 percent of the mean* of the labor-related and non-labor per-visit costs for free-standing home health agencies, the IPS lowered the limit to *105 percent of the median* of· such costs. 42 U.S.C. § 1395(x)(v)(1)(L)(I)(IV).

6. An HHA which had a full cost reporting period ending during the 1994 fiscal year is to receive reimbursements calculated according to per-beneficiary cost limits based 75 percent on 98 percent of the reasonable allowable costs for the individual HHA's 12–month cost reporting period ending during fiscal year 1994 and based 25 percent on 98 percent of the standardized regional average of such costs for the HHA's census division, as applied to such HHA, for cost reporting periods ending during fiscal year 1994, such costs updated by the home health market basket index. 42 U.S.C. § 1395(x)(L)(v)(I). The HHA's payment is then determined by multiplying this limit by the HHA's unduplicated census count of Medicare patients for the cost reporting period subject to the limitation. *Id.* at (v)(II).

For beneficiaries who use services furnished by more than one HHA, the per-beneficiary limit is to be prorated among such HHAs. *Id.* at (vi)(II).

In addition, the market basket update, which adjusts the 1994 figures to reflect inflation, is not to include inflation from July 1, 1994, to July 1, 1996. *Id.*

An HHA that did not have a full cost reporting period end during 1994 or that is "new" will receive per-beneficiary limits equal to the median of the limits (or the Secretary's best estimate thereof) applied to the other HHAs. *Id.* at (vi)(I).

7. Since the filing of this lawsuit, HCFA has issued regulations setting forth reimbursement levels for cost reporting periods beginning on or after October 1, 1998. 63 Fed.Reg. 42,912 (1998). These regulations include responses to comments submitted to HCFA concerning both the January 2, 1998, per-visit cost limits and the March 31, 1998, per-beneficiary limits. These August 11, 1998, regulations are not part of the litigation before the Court.

8. The Chief Counsel for Advocacy of the SBA is the governmental watchdog for agency compliance with the RFA.

tional evidence—namely, this letter—after a three day evidentiary hearing. The Court now examines it admissibility as timely-offered, summary judgment evidence.

In their response to the Defendants' motion for summary judgment, Plaintiffs incorporate the exhibit into the response by reference. (Pls.' Resp. to Defs.' Mot. for Summ. J. at 4.) Consequently, the Court views Mr. Glover's letter as additional legal argument and will not strike it. This ruling is further supported by the RFA, which allows the Chief Counsel for Advocacy of the SBA to appear as amicus curiae in any action brought in a court of the United States to review a rule. 5 U.S.C. § 612(b). The Court does not view Mr. Glover's letter as determinative of any issue in this case. Defendants' Objection to Plaintiffs' Exhibit 1 is **OVER-RULED.**

### B. *The Regulatory Flexibility Act, 5 U.S.C. §§ 601—612.*

Congress enacted the RFA in 1980 to encourage administrative agencies to consider the potential impact of federal regulations on small businesses. Congress amended the RFA in 1996 by enacting the Small Business Regulatory Enforcement Fairness Act, Pub.L. No. 104–121, tit. II (1996), in an effort to both further focus the various agencies on the potential burden of the agencies' regulations on small business and to bolster the enforceability of the RFA. *See generally Associated Fisheries of Maine, Inc. v. Daley,* 127 F.3d 104, 111–114 (1st Cir.1997) (describing purpose of RFA and tracing legislative history). Whenever an agency is required by the Administrative Procedure Act ("APA"), 5 U.S.C. § 553, or any other law to publish a notice of proposed rulemaking, it must prepare and make available for public comment an initial regulatory flexibility analysis. 5 U.S.C. § 603. When an agency promulgates a final rule, after being required either by the APA or another law to publish a general notice of proposed rulemaking, it must also prepare a final regulatory flexibility analysis (FRFA). In the FRFA, the agency must describe, among other things,

> the steps the agency has taken to minimize the significant economic impact on small

entities consistent with the stated objectives of applicable statutes, including a statement of the factual, policy, and legal reasons for selecting the alternative adopted in the final rule and why each one of the other significant alternatives to the rule considered by the agency which affect the impact on small entities was rejected.

5 U.S.C. § 604(a)(5). However, the requirement for a FRFA does not apply if the head of the agency certifies that the rule "will not have a significant economic impact on a substantial number of small entities." 5 U.S.C. § 605(b).

Small entities adversely affected or aggrieved by a final agency action are entitled to judicial review of agency compliance with the requirements of § 604 (as well as other sections). 5 U.S.C. § 611(a)(1). This provision was added by the 1996 amendments to the RFA. Title 5 U.S.C. § 611(a)(4) states that, in granting relief in an action under this section, the Court shall take corrective action consistent with this chapter and chapter 7 (including the arbitrary and capricious standard of 5 U.S.C. § 706(2)(A)). Corrective action may include a) remanding the rule to the agency, and b) deferring the enforcement of the rule against small entities unless the Court finds that continued enforcement of the rule is in the public interest. 5 U.S.C. § 611(a)(4).

Plaintiffs allege that HHS violated § 604(a)(5) of the RFA when it issued both the January 2, 1998, regulation for the revised per-visit limits of the IPS and the March 31, 1998, regulation for the new per-beneficiary limit of the IPS. Plaintiffs base their argument on the absence in both regulations of any examination of alternatives to the adopted rule. The January 2, 1998, regulation states:

> [t]his notice is necessary to implement the provisions of [42 U.S.C. § 1395x(v)(1)(L) ] as amended by BBA '97, these [sic] alternatives to the provisions set forth in this notice are not available.

63 Fed.Reg. 89, 103 (1998). In the March 31, 1998, regulation, HCFA concluded:

> [w]e have examined the options for lessening the burden on small entities, however,

the statute does not allow for any exceptions to the aggregate per-beneficiary limitation based on size of entity. Therefore, we are unable to provide any regulatory relief for small entities.

63 Fed.Reg. 15,717, 15,734 (1998).

Defendants do not deny that both regulations did not include any examination of alternatives to the final rules. However, Defendants argue they were not required to examine alternatives to the proposed rules because the BBA did not grant the Secretary of HHS any discretion in implementing the IPS.[9]

There exists an admitted scarcity of precedent on this issue. There does not exist a single Fifth Circuit case interpreting the RFA, to say nothing of this particular, narrow issue. The Court, therefore, is forced to examine the plain meaning of the Statute and the legislative history in determining whether HHS was under a duty to consider other significant alternatives.

The legislative history to the RFA and the 1996 amendments to the RFA demonstrates that Congress did not intend for agencies to consider other alternatives when Congress does not grant the agency discretion in creating the particular rule. The Senate Report to the 1980 legislation explains that:

> Since not all of these alternatives will be appropriate for consideration by an agency relative to a particular rule, the bill does not require an agency to consider each listed alternative during the rulemaking proceeding. Some statutes, for example, place explicit limitations on agency discretion in rulemaking. If uniform requirements are mandated by statutes, a statement to that effect would obviate the need

to solicit or consider proposals which include differing compliance standards.

S.Rep. No. 878, 96th Cong., 2nd Sess. at 13 (1980), *reprinted in* 1980 U.S.C.C.A.N. 2788, 2800. An analysis accompanying the 1996 amendments to the RFA reaffirmed this conclusion. "Nothing in the bill directs an agency to choose to [sic] regulatory alternative that is not authorized by the statute granting regulatory authority." 142 Cong. Rec. S3242, S3245 (daily ed. March 29, 1996) (Section by section analysis of the Small Business Regulatory Enforcement Fairness Act, submitted by Sen. Bond).

In passing those portions of the BBA implementing the IPS, Congress legislated with remarkable detail. Congress established the exact formula for determining the per-beneficiary limits. Congress mandated that the Secretary of HHS not take into account two years worth of inflation in calculating the home health market basket. Plaintiffs point to the per-beneficiary limit for new providers or providers without a 12 month cost reporting period ending in fiscal year 1994 as an area where the Secretary had discretion. However, contrary to their claim; HHS did not have any latitude here either; the BBA requires the use of the *national* median. The BBA directs the Secretary to establish the per-beneficiary limit for new providers at the median of the limits for the other home health agencies. The Court interprets this to mean the *national* median. Since the BBA mandated the form which the per-visit limit and the per-beneficiary limit would take, HHS, after making a statement to that effect, was not under an obligation to create and consider other alternatives. *See also Associated Fisheries of Maine, Inc. v. Daley,*

---

9. Defendants also contend, in a footnote, that § 604(a)(5) does not apply in this case because HCFA was not required to publish a general notice of proposed rulemaking, a precondition for the application of § 604(a). (Defs.' Mem. in Supp. of Mot. for Summ. J. at 9, n. 6.) HCFA waived the general notice of proposed rulemaking under the "good cause" exception to § 553(b) of the APA. 5 U.S.C. § 553(b)(B) (waiver permitted "when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest."). While the exact issue is not before the Court, it is not clear that HCFA was justified in its invocation of the good cause exception. *See Asiana Airlines v. FAA,* 134 F.3d 393, 393–397 (D.C.Cir.1998) (discussing the propriety of asserting the good cause exception to normal APA procedures based upon tight statutory deadlines). Believing there is sufficient justification for granting summary judgment without this argument, the Court does not rely on the argument that § 604(a)(5) does not apply in this particular case in reaching its conclusion that summary judgment should be granted.

127 F.3d 104, 117 (1st Cir.1997) (rejecting Plaintiffs' argument that the Department of Commerce violated the pre–1996 amendment version of the § 604(a)(5) in not developing alternatives to the final rule, stating, "[plaintiffs] confuse what [they] desire with what the Statute obliges the Secretary to do.")

Furthermore, even assuming HHS actually possessed some minimal amount of latitude in implementing the IPS, the Court is of the opinion that HHS did not act arbitrarily and capriciously. Under arbitrary and capricious review, an agency's decision "need not be ideal." *W.L. Harris v. United States,* 19 F.3d 1090, 1096 (5th Cir.1994). So long as the agency gives at least minimal consideration to relevant factors and there was not a clear error of judgment, its decision is not arbitrary and capricious. *Id.* Section 604(a)(5) of the RFA requires an agency to explain why it rejected other *significant* alternatives. Even assuming HHS had some discretion, it was not a "clear error of judgment" for HHS to determine there were no other *significant* alternatives under the language of the BBA.

In sum, the Court is of the opinion the Defendants did not violate the RFA.

## III. CONCLUSION

Defendants' Motion for Summary Judgment is **GRANTED.**

Judgment will enter accordingly.

SO ORDERED.